## ALECIA EMRICH *v.* MICHAEL EMRICH
### (AC 31636)

Lavine, Beach and Lavery, Js.

Argued December 6, 2010—officially released April 5, 2011

*Anne C. Dranginis*, with whom, on the brief, was *Bradford S. Booth*, for the appellant (defendant).

*Alecia A. Emrich*, pro se, the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Michael Emrich, appeals from the judgment of the trial court entering certain

postdissolution orders pursuant to motions filed by him and the plaintiff, Alecia Emrich. The defendant claims that the court (1) erred in modifying its custody order to permit the plaintiff to relocate to Maine with three of the parties' five children and (2) abused its discretion with respect to various postdissolution financial orders. We affirm the judgment of the trial court.

The following facts and procedural history are relevant. The parties were married in 1986. Five children were born of the marriage. In October, 2006, the plaintiff commenced a divorce action against the defendant. On February 26, 2008, the court, *Pinkus, J.*, entered a judgment of dissolution, which incorporated both a separation agreement and a parenting plan that had been entered into by the parties. Pursuant to the parenting plan, the parties were awarded joint legal custody of the five children with their primary physical residence to be with the plaintiff at the marital home in Fairfield. The parenting plan also provided that for as long as the parties continue to live within twenty miles of Fairfield and any of the children was a minor, the parent having physical custody of any minor children could not relocate to a residence more than twenty driving miles from the primary residence of the other party without there first having been a determination of the issue of relocation either by written agreement between the parties or by order of a court.

On March 24, 2009, the defendant filed a postjudgment motion to open and modify the judgment based on a substantial change in circumstances. The change in circumstances was, to a large extent, the defendant's decrease in income. The defendant sought a downward modification regarding alimony, child support and life insurance as a result of a change in employment and a resulting 75 percent reduction in salary. On March 31, 2009, the plaintiff filed a motion entitled "Motion for Modification of Visitation, Postjudgment Motion for

Order Re Relocation Postjudgment." In this motion, the plaintiff sought an order allowing her to move to the Portland, Maine metropolitan area based on a substantial change in circumstances.

Following a hearing, the court, *Gould, J.*, on November 5, 2009, issued a memorandum of decision concerning the parties' postjudgment motions. In its decision, the court granted the defendant's motion to modify child support and alimony, but denied his motion for relief retroactive to April, 2009. The court granted the plaintiff's motion to modify visitation and for an order permitting relocation to the Portland, Maine metropolitan area. The court also ordered that joint legal custody of the five minor children, as ordered in the initial judgment and parenting plan shall continue. It further ordered that primary residential custody of the two oldest children, Michael and Brendan, was to be with the defendant and that primary residential custody of the three youngest children, Grant, Garrett and Dean, was to be with the plaintiff.[1] This appeal followed.

I

The defendant first claims that the court erred in modifying its custody order to permit the plaintiff to relocate to Maine with the three younger children, while the defendant remains in Connecticut with the two older children. We disagree.

"Our standard of review of a trial court's decision regarding custody, visitation and relocation orders is one of abuse of discretion. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion. . . .

[1] During the pendency of this appeal, the oldest child turned eighteen and the next oldest is approximately one year younger.

[T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Noonan* v. *Noonan*, 122 Conn. App. 184, 188–89, 998 A.2d 231, cert. denied, 298 Conn. 928, 5 A.3d 490 (2010).

"[General Statutes] § 46b-56d . . . sets out the analysis a court is to apply when deciding a postjudgment motion to relocate with a couple's minor child. Section 46b-56d adopted the shift in the burden of proof to the relocating parent set forth in *Ireland* v. *Ireland*, 246 Conn. 413, 425, 717 A.2d 676 (1998), and expanded the best interest of the child standard adopted through case law by providing specific factors that the court is to consider." (Internal quotation marks omitted.) Id., 191–92.

Section 46b-56d provides: "(a) In any proceeding before the Superior Court arising after the entry of a judgment awarding custody of a minor child and involving the relocation of either parent with the child, where such relocation would have a significant impact on an existing parenting plan, the relocating parent shall bear the burden of proving, by a preponderance of the evidence, that (1) the relocation is for a legitimate purpose, (2) the proposed location is reasonable in light of such purpose, and (3) the relocation is in the best interests of the child.

"(b) In determining whether to approve the relocation of the child under subsection (a) of this section, the court shall consider, but such consideration shall not

be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements."

The court found, pursuant to § 46b-56d (a), that the plaintiff proved by a preponderance of the evidence that the proposed relocation of the children to Maine was for a legitimate purpose, the proposed location was reasonable in light of such purpose, and the relocation was in the best interests of the children.

A

The defendant claims that the court abused its discretion in permitting the three younger children to relocate with the plaintiff to Maine while the two older children remain in Connecticut because there was insufficient evidence presented at the hearing that such an order is in the best interests of the children. We are not persuaded.

1

The defendant argues that when a court is considering whether to grant a motion for relocation that separates siblings, certain circumstances must exist for a sibling separation to be in the children's best interests. Citing several trial court cases,[2] the defendant contends

---

[2] The defendant cites: *Mahoney* v. *Mahoney*, Superior Court, judicial district of Ansonia-Milford, Docket No. FA07-400684 (March 31, 2008); *Alves* v. *Alves*, Superior Court, judicial district of New London, Docket No. 10 50 48 (October 12, 1994); *Paul* v. *Paul*, Superior Court, judicial district of New London, Docket No. 520208 (October 15, 1993); *LaChapelle* v. *LaChapelle*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FA91-0119704 S (January 28, 1993) (8 Conn. L. Rptr. 339).

that sibling separation can be in the best interests of each sibling when each sibling has the ability to have consistent and meaningful contact with both parents and with each other. Citing case law from other states, the defendant also argues that sibling separation can be permitted where compelling circumstances exist. The defendant argues that in the present case, sibling separation is not in the children's best interests because the siblings are separated by a minimum of an eight hour round trip, thereby denying them consistent and meaningful contact with both parents and no compelling circumstances otherwise exist to necessitate the separation.

The court specifically stated that it had "carefully considered" the criteria contained in § 46b-56d. The court noted that the defendant's diminished income contributed to the need of the plaintiff to move to Maine, where she could continue her education and where she could rely on her parents for assistance. She could live considerably more frugally in Maine than in Fairfield County. The special needs of one of their children could be met in Maine. Additionally, the children had vacationed in Maine and were comfortable there. Although § 46b-56d does not explicitly require the court to consider the issue of sibling separation in the relocation context, the court clearly considered the issue in the circumstances of this case and, given the alternatives, concluded that separation was in the best interests of the children. We decline the invitation to read an additional criterion into the statute.

2

The defendant also argues that the court erred in relying on the testimony of Mark Henderson, the children's guardian ad litem. The defendant states that Henderson testified that he did not speak to the children or the parents regarding sibling separation. He argues

that Henderson's testimony is more like a "hunch" than reasoned analysis and, as such, cannot provide sufficient foundation for the court's conclusion that sibling separation would be in the best interests of the children. The defendant also contends that the fact that Henderson's testimony supporting separation was contrary to the testimony of Leah Martin Fucci, the family relations counselor, and Eric Frazer, a psychologist who testified as an expert witness for the defendant, further demonstrates that it is not in the children's best interests to be separated. We are not persuaded.

Although Henderson testified that he did not speak to the children or parents regarding sibling separation, he testified that he spoke with the children and parents extensively regarding relocation. Henderson testified that the proposed relocation would be in the best interests of the three youngest children, but that the two oldest children should remain with their father and continue to attend the same high school because they are relatively close to graduating. Henderson further testified that there was a "distinction" in the family between the three youngest boys, whom Henderson described as one unit that tended to do activities together, and the two oldest, whom Henderson describes as another unit that tended not to go along with their younger brothers. The court was free to consider Henderson's testimony more persuasive than that of Fucci or Frazer. "[I]t is the sole province of the trial court to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 17, 901 A.2d 649 (2006). Accordingly, the court did not err in crediting and relying to a degree on Henderson's testimony regarding relocation.

3

The defendant next claims that the court abused its discretion in failing to consider any testimony from the children regarding separation. We do not agree.

In support of his argument, the defendant highlights the following evidentiary ruling. During the defendant's direct examination of Frazer, the defendant sought to introduce into evidence letters that the two oldest siblings had written to him regarding the issue of sibling separation. The court declined to admit the letters into evidence, first on the basis that the letters were hearsay and second on the basis that the court had heard testimony from Henderson and Fucci regarding the issue and there was no necessity for additional testimony.

The defendant did not object to this evidentiary ruling. To the extent that the defendant seeks review of this unpreserved evidentiary ruling on appeal, we decline to review it. See, e.g., *State* v. *Monahan*, 125 Conn. App. 113, 124, 7 A.3d 404 (2010).

To the extent that the defendant is claiming that the court's evidentiary ruling foreclosed any possibility of the admission of evidence from the children on the issue of sibling separation, we do not agree. The court's ruling pertained to the admission of two letters, which the court ruled were hearsay, and did not necessarily preclude the defendant from admitting other evidence from the children regarding the issue of sibling separation. Furthermore, the defendant does not point to any other instances in the record where the defendant sought to introduce into evidence, and the court declined to admit, testimony or other evidence regarding the children's views on separation.

4

The defendant also argues that the court erroneously found that he would be willing to relocate to Maine.

He further argues, assuming arguendo that the record supports the finding, that it was an abuse of discretion for the court to rely on this finding when determining the children's best interests. He argues that by relying on the defendant's predisposition to move to Maine if relocation were granted, the court implicitly stated that it does not have to give any consideration to the issue of sibling separation because such separation would not actually occur. We are not persuaded.

With respect to the first factor under § 46b-56d (b), namely, each parent's reasons for seeking or opposing the relocation, the court noted that while the defendant opposed relocation, the defendant testified that if the plaintiff's motion for relocation were granted, he would move to Maine to be near his sons because he did not believe in a " 'long distance fathership.' " In analyzing the quality of the child's future contact with the nonrelocating parent under § 46b-56d (b), the court stated that while the defendant expressed legitimate concerns about the plaintiff's custody arrangement, it "is persuaded that the defendant, as he testified to in court, would be willing to move his legal practice and his home to the greater Maine area, which would preserve close contact between both parents and their sons, which would clearly be in their best interests."

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Buehler* v. *Buehler,* 117 Conn. App. 304, 317–18, 978 A.2d 1141 (2009).

We cannot conclude that the court's finding that the defendant was willing to move to Maine was clearly erroneous. The defendant testified that if the plaintiff's motion for relocation was granted, he would have to decide between remaining in Connecticut and moving to Maine. The defendant noted that one obstacle was financial, in that he had a low six figure income in Connecticut and was not guaranteed income in Maine. The defendant noted that "if we're talking about financials . . . the choice is clear." The defendant, however, also stated that "[g]iven my solid and rich relationship with all my sons and what they mean to me in my life, I believe that I would have to move to Maine as well, as a long distance fathership goes against everything in my body." The defendant also testified on a separate occasion about the obstacles to his relocation to Maine, namely, an inability to find employment in Maine and the desire of the two oldest siblings to continue attending high school in Fairfield. He testified, however, that "if the motion were granted . . . every bone in my body would want to be up with my three younger boys." Despite the mention of obstacles, the defendant testified that he desired to move to Maine to be with his younger boys.[3] The court is free to accept the defendant's testimony in which he expressed a desire to move to Maine.

Contrary to the defendant's argument, the court's consideration of the defendant's expressions about the

---

[3] The trial court is the "sole arbiter of credibility, [and it is] free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Remillard* v. *Remillard,* 297 Conn. 345, 357, 999 A.2d 713 (2010).

prospect of moving to Maine does not necessarily indicate that the court failed to consider the issue of sibling separation. There is no indication from the memorandum of decision that the court failed to address the issue of sibling separation. Rather, the court discussed and credited Henderson's testimony in which he concluded that it was in the children's best interest for the two oldest children, who are close to graduation age, to remain in Fairfield and for the three youngest children to relocate to Maine. In analyzing the impact of relocation, the court noted that the defendant "would be willing" to move his legal practice to Maine, thereby preserving contact with his sons. The court further stated that the defendant's "readiness to move to Maine and the plaintiff's willingness to provide him with additional weekend, holiday and summer vacation time with the children prior to any such move, would lessen any negative impact resulting from the proposed relocation." While the court took into account the defendant's *willingness* to move to Maine, the court gave no indication that his willingness translated into a definite plan to move to Maine. Rather, in its orders, the court took into account sibling separation between Maine and Connecticut when it referenced visitation schedules between the two states and ordered the parties to purchase web cams in order to interact with their children.

B

The defendant next claims that the court did not properly apply the test for relocation as set forth in § 46b-56d. We do not agree.

"[W]hether the court applied the correct legal standard is a question of law subject to plenary review." *Wieselman* v. *Hoeniger*, 103 Conn. App. 591, 598, 930 A.2d 768, cert. denied, 284 Conn. 930, 934 A.2d 245 (2007).

1

The defendant argues that the court did not apply the proper test for relocation as set forth in § 46b-56d (b). The defendant specifically argues that the court failed to consider all five factors set forth in § 46b-56d (b) when concluding that relocation was in the children's best interests. We disagree.

We agree with the defendant that the provisions of § 46b-56d (b) are mandatory. Section 46b-56d (b) provides: "In determining whether to approve the relocation of the child under subsection (a) of this section, the court *shall* consider, but such consideration shall not be limited to: (1) Each parent's reasons for seeking or opposing the relocation; (2) the quality of the relationships between the child and each parent; (3) the impact of the relocation on the quantity and the quality of the child's future contact with the nonrelocating parent; (4) the degree to which the relocating parent's and the child's life may be enhanced economically, emotionally and educationally by the relocation; and (5) the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements." (Emphasis added.)

The defendant argues that the court failed to consider, under § 46b-56d (b) (2) and (5), the quality of the relationships between the child and each parent and the feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements. Although the court did not expressly devote paragraphs in its memorandum to these factors, the court expressly stated that it considered the criteria set forth in § 46b-56d.[4] "[T]he trial court is presumed to have applied the law correctly, and it is the burden of the appellant to show to the contrary.

[4] The court did devote paragraphs to three of the factors. Many of the factors in this case, however, overlap.

. . . Moreover, even if the trial court record is ambiguous, we read the record to support, rather than to undermine, the judgment." (Citation omitted; internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 9, 826 A.2d 1088 (2003).

2

The defendant also argues that the court did not properly consider the issue of sibling separation in its consideration of the five factors set forth in § 46b-56d (b).[5] He argues that the statute provides a standard for analyzing the relocation of a single child, but does not take into consideration a situation where siblings are being separated. In such situations, the defendant argues, the court must consider the issue of sibling separation. Relying on case law from other jurisdictions,[6] the defendant argues that compelling or extraordinary circumstances justifying the separation of siblings must exist before sibling separation can be ordered. The record shows that the court was aware of and considered the issue, but that other considerations favored the chosen disposition. Trial courts frequently and regrettably must address situations in which no feasible solution is ideal. In this instance, sibling separation, while not to be encouraged, was not a sufficiently strong consideration to trump all others. Financial and family considerations favored relocation. The court did not abuse its discretion.

---

[5] We note that § 46b-56d does not explicitly require a court to consider the issue of sibling separation in the context of relocation.

[6] See, e.g., *In re Marriage of Heath*, 122 Cal. App. 4th 444, 18 Cal. Rptr. 3d 760 (2004); *In re Marriage of Williams*, 88 Cal. App. 4th 808, 105 Cal. Rptr. 2d 923 (2001); *Sparkman* v. *Sparkman*, 441 So. 2d 1361 (Miss. 1983); *Valenti* v. *Valenti*, 57 App. Div. 3d 1131, 869 N.Y.S.2d 266 (2008), leave to appeal denied, 12 N.Y.3d 703, 904 N.E.2d 841, 876 N.Y.S.2d 704 (2009); *Pilon* v. *Pilon*, 342 Pa. Super. 52, 492 A.2d 59 (1985); *Fuerstenberg* v. *Fuerstenberg*, 591 N.W.2d 798 (S.D. 1999); *Olson* v. *Olson*, 438 N.W.2d 544 (S.D. 1989).

## II

The defendant next claims that the court abused its discretion with respect to various financial orders.[7] We decline to review these claims.

"Our standard of review for financial orders in a dissolution action is clear. The trial court has broad discretion in fashioning its financial orders . . . . [T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have *no reasonable basis in fact. . . .* It is within the province of the trial court to find facts and draw proper inferences from the evidence presented." (Citation omitted; internal quotation marks omitted.) *Desai* v. *Desai*, 119 Conn. App. 224, 235, 987 A.2d 362 (2010).

When ruling on the financial orders at issue, the court simply stated its orders, without any reasoning. The defendant filed a motion to reargue and for articulation in which he sought reargument and/or articulation with respect to the financial orders at issue, which the court denied.[8] The defendant, however, failed to file a motion for review with this court in accordance with Practice

---

[7] Specifically, the defendant claims that the court abused its discretion (1) in refusing to apply retroactively its order modifying downward the defendant's alimony and child support obligations, (2) in granting him a child support reimbursement of only $2240, (3) in ordering, when granting his motion to divide escrow moneys, that the sum of $4100 be paid to the defendant when the defendant was entitled to all of the escrow moneys other than the amount of $4100, (4) in denying him a $49,000 tax contribution from the plaintiff and (5) allowing the plaintiff's "safe harbor" provision to continue in light of her relocation to Maine.

[8] To the extent that the defendant failed to request an articulation for any of the financial orders at issue, we decline to review them on that basis. See Practice Book §§ 60-5 and 61-10; see also *Mickey* v. *Mickey*, 292 Conn. 597, 609, 974 A.2d 641 (2009) ("It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record [when] the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." [Internal quotation marks omitted.]).

Book §§ 66-5 and 66-7. "It is axiomatic that the appellant must provide this court with an adequate record for review. See Practice Book § 61-10 . . . . [W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal of the rectification memorandum to this court via the motion for review." (Citation omitted; internal quotation marks omitted.) *Ramondetta* v. *Amenta*, 97 Conn. App. 151, 167–68, 903 A.2d 232 (2006). The defendant's failure to seek review by this court pursuant to Practice Book § 66-7 precludes further review of the defendant's claims.

The judgment is affirmed.

In this opinion the other judges concurred.